UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-CR-57-TAV-DCP-5 |
| | ) | |
| DEANDRE E. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate.

This case is before the Court on the Government's Emergency Motion Under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [Sealed Doc. 272], filed under seal on August 17, 2020. The Government requests that the Court revoke the release order issued by Magistrate Judge Elizabeth A. Stafford in the Eastern District of Michigan on August 17, 2020, in *United States v. Williams*, No. 2:20-mj-30293-DUTY-1 (E.D. Mich. August 17, 2020).[1] The Court held a hearing on the pending motion via videoconference on September 18, 2020. Assistant United States Attorney Kevin Quencer appeared on behalf of the Government, while Attorney Rachel Wolf appeared on behalf of Defendant. Defendant was also present via videoconference.

---

[1] The Court was provided with transcript of the August 17, 2020 hearing where Magistrate Judge Stafford announced from the bench the conditions of Defendant's release. [Doc. 277-1].

Accordingly, for the reasons discussed herein, the Court recommends that the Government's emergency motion [Doc. 272] be granted and that Defendant shall be detained pending his trial in this matter.

## I. BACKGROUND

The Superseding Indictment [Doc. 47] charges Defendant in Count One with conspiracy to knowingly and intentionally possess with intent to distribute 100 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance, and 40 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance.

Defendant was arrested on this charge in Detroit, Michigan on August 13, 2020 on the outstanding arrest warrant from the Superseding Indictment. Defendant subsequently appeared before United States Magistrate Judge Elizabeth A. Stafford in the Eastern District of Michigan for an Initial Appearance on August 14, 2020. On August 17, 2020, Defendant appeared before Judge Stafford for a detention hearing, along with Attorney Leon Parker, the Federal Community Defender who was appointed to represent him. *United States v. Williams*, No. 2:20-mj-30293-DUTY-1 (E.D. Mich. August 17, 2020); *see* [Doc. 277-1].

The Government sought to detain Defendant pending trial, citing the presumption in favor of detention, the danger Defendant poses to the community, as well the potential risk of flight. First, the Government asserted that the evidence against Defendant was quite strong, claiming that Defendant was captured on video selling drugs on numerous occasions to confidential sources in the Eastern District of Tennessee. [*Id.* at 7]. The Government noted that it produced to Defendant information about four controlled substance transactions in which he was alleged to be involved, the summary of a wiretap intercept from November 8, 2018 involving Defendant, and the Detroit

2

Police Department report of Defendant's arrest on August 13, 2020. [*Id.* at 6]. The Government proffered that Defendant was captured on video selling 3.4 grams of a heroin/fentanyl mixture to a confidential source in a drug-free school zone on July 19, 2018; selling 8.4 grams of a heroin/fentanyl mixture to the confidential source on July 26, 2018; selling 2.1 grams of a heroin/fentanyl mixture in a drug-free school zone on August 21, 2018; and selling 6.73 grams of a heroin/fentanyl mixture in a drug-free school zone on September 28, 2018. [*Id.* at 7–8]. Additionally, the Government claimed that an intercepted wiretap summary establishes that during an argument with a codefendant, Defendant indicated that he had been moving thousands of grams of heroin/fentanyl in Tennessee. [*Id.* at 8]. The Government also later noted that Defendant is facing a mandatory minimum five years prison sentence due to Count One of the Superseding Indictment. [*Id.* at 13].

Next, the Government pointed to the circumstances surrounding Defendant's arrest on August 13, 2020. [*Id.* at 9]. The Government noted that the Detroit Police Department arrest report notes that law enforcement initiated a traffic stop after observing an orange Dodge Nitro driving erratically and turning the wrong way onto a one-way street. [*Id.*]. Defendant did not have a valid driver's license on his person, and law enforcement observed a female passenger who was "[c]ut up, bruised and shaking in the passenger seat." [*Id.*]. Law enforcement spoke with the female passenger, and she stated that she had jumped out of the vehicle due to an argument she had with Defendant, and law enforcement noted injuries to her hands and arms consistent with jumping out of a moving vehicle. [*Id.*]. However, the Government also noted that Defendant then provided an alias to the Detroit Police Department, as he provided the name Deion Williams with a false birth date that was not his own. [*Id.*]. After law enforcement was repeatedly unable to

3

identify this individual with the provided information, they requested a unit with a fingerprint scanner and were able to positive identify Defendant. [*Id.* at 10].

Ultimately, the Government argued that Defendant poses a danger to the community and a risk of flight because of the applicable presumption, the strength of the evidence against Defendant, and the troubling nature of his arrest on August 13, 2020—including providing an alias to law enforcement. [*Id.*].

Defendant sought release pending trial, claiming that he has a very slight criminal history, as the pretrial services repot indicated that he did not have any prior criminal convictions. Defendant pointed to the dismissal of a possession of marijuana charge after the completion of a youthful offender program. [*Id.* at 11]. Defendant also claimed that he had an extensive work history, in that he had been employed as a horse trainer for Urban Cowboy. [*Id.*]. Defendant stated that he has significant family ties to the Michigan area, as his grandmother is willing to have him live with her and serve as a third-party custodian, as well as that his great-grandmother would also be present at the residence. [*Id.*]. With respect to the circumstances of his arrest, Defendant argued that the domestic violence allegations did not result in a charge or conviction. [*Id.* at 12]. Therefore, Defendant claimed that house arrest would be appropriate to satisfy any concerns that the Court may have involving the risk of flight. [*Id.*].

After hearing oral argument, Magistrate Judge Stafford found that Defendant had rebutted the applicable presumption and ordered Defendant released pending trial. First, Magistrate Judge Stafford noted the three factors that would support detention: 1) the current charges; 2) the use of an alias and providing a false birth date when Defendant was arrested by law enforcement; and 3) the presence of a female passenger in Defendant's vehicle who had bruises and scrapes, although

4

she said she had jumped out of the car during an argument with Defendant. [*Id.* at 14].

However, Magistrate Judge Stafford also noted that Defendant had successfully completed a term of probation under the Michigan Holmes Youthful Trainee Act ("HYTA"), which would overcome the presumption that he would violate the conditions of his release by committing new crimes or failing to appear before the Court. [*Id.* at 15]. She reviewed the "very significant" nature and circumstances of the charges, including the use of fentanyl, but found that home incarceration with a GPS tether, while residing with his grandmother and great-grandmother, would reasonably assure the safety of the community and Defendant's appearance for future proceedings. [*Id.*]. Magistrate Judge Stafford reviewed other standard conditions of release with Defendant and found that Defendant should remain detained until he could be outfitted with a GPS tether. [*Id.* at 20]. However, upon the motion of the Government, Magistrate Judge Stafford stayed the order of release until 5:00 p.m. on August 17, 2020, to allow this Court to consider a motion to revoke her release order. [*Id.* at 22].

The Government then filed the instant motion [Doc. 272] on August 17, 2020, requesting that the Court stay the release order from the Eastern District of Michigan until a hearing could be held in the Eastern District of Tennessee, as well as that it ultimately revoke the release order of Magistrate Judge Stafford. The Court subsequently stayed Magistrate Judge Stafford's release order and ordered that Defendant remain detained pending resolution of the Government's emergency motion during a September 9, 2020 hearing. [Doc. 273]. However, on August 18, 2020, Defendant was mistakenly released in the Eastern District of Michigan and self-surrendered to the United States Marshals Service upon being notified of the error. *See* [Doc. 277].

5

On September 8, 2020, Defendant filed an emergency motion for immediate release pending the hearing on the Government's emergency motion to revoke the release order. [Doc. 277]. The motion relates that defense counsel was informed that Defendant would not be available for a hearing in the Eastern District of Tennessee until roughly September 23, 2020, which would not allow for a prompt determination of the Government's motion. [*Id.* at 3]. The Government responded in opposition [Doc. 279], asserting that Defendant is both a risk of flight and danger to the community, and that a hearing on the motion is necessary. The Government detailed that Defendant was captured on video surveillance distributing heroin on eight different occasions in July, August, September and December of 2018, and January of 2019. [*Id.* at 3]. Additionally, the Government noted that while the Court ordered Defendant to be brought to the Eastern District of Tennessee on September 4, 2020, Defendant had not yet arrived in the District, likely due to the effect of the COVID-19 pandemic on the United States Marshal's Service. [*Id.* at 1].

Defendant's video arraignment and detention hearing was reset to September 23, 2020, and again rescheduled to September 18, 2020. On September 16, 2020, United States District Judge Varlan denied Defendant's emergency motion for release [Doc. 277], treating the motion as a request to reconsider the Court's prior order [Doc. 273], and ordering that Defendant remain detained pending resolution of the Government's motion to revoke Magistrate Judge Stafford's release order [Doc. 272]. [Doc. 290].

## II. SUMMARY OF INFORMATION OFFERED AT THE SEPTEMBER 18 HEARING

As noted above, the parties appeared before the undersigned on September 18, 2020, for an Arraignment and hearing on the Government's emergency motion to revoke Defendant's release [Doc. 272]. [Doc. 295].

6

AUSA Quencer first argued that Defendant is presumed to be both a flight risk and a danger due to the nature of the charged offense. AUSA Quencer detailed Defendant's involvement in the distribution of heroin and fentanyl from the Eastern District of Michigan to the Eastern District of Tennessee, as Defendant was caught on video surveillance selling drugs to a confidential source on numerous occasions, including several times in a drug-free school zone. Moreover, the Government claimed that Defendant was captured overheard talking about extensive drug trafficking on a wiretap of several members of the drug trafficking operation. Additionally, AUSA Quencer cited to the plea agreement of Codefendant Thomas, wherein Codefendant Thomas admitted that a drug transaction was arranged in which a female victim purchased "two halfs" of a heroin mixture and subsequently died from a fentanyl overdose. *United States v. Thomas*, No. 3:19-cr-57-2 (E.D. Tenn. October 3, 2019) [Doc. 136].[2] AUSA Quencer argued that this death of a victim tied to the conspiracy shows the overwhelming dangerousness involved in the distribution of heroin and fentanyl.

Further, AUSA Quencer claimed that Defendant has not presented other viable means of employment[3] and maintained that the Government presented continuing evidence that Defendant participated extensively in the drug trafficking operation. AUSA Quencer noted that Defendant was not arrested until approximately sixteen months after the charges were made public, and Defendant knew that several codefendants were also arrested. The Government asserted that

---

[2] The Court notes that Defendant is not charged with any death enhancement counts in the Superseding Indictment.

[3] As AUSA Quencer noted, the Pretrial Services Report reflects only two jobs in Defendant's employment history: one with GFL Waste Management lasting only 3 months and the other with Urban City Cowboys (Pony rides) lasting one year.

7

Defendant actively tried to avoid arrest on the pending charges and provided an alias to law enforcement on August 13, 2020. Lastly, the Government also noted that Defendant is facing a mandatory minimum of five years imprisonment.

Attorney Wolf noted that Magistrate Judge Stafford previously found that Defendant had overcome the presumption against him due to this completion of a juvenile offender probation program. Upon questioning from the undersigned, Attorney Wolf noted that Defendant was twenty years old when he completed twelve months of probation under the HYTA. Attorney Wolf also cited to the magistrate judge's finding that the risk of danger of Defendant's non-appearance was overcome by the imposed conditions of home incarceration and a GPS tether. She argued that Defendant does not have a significant criminal history and stated that Defendant's grandmother, Denise Williams, and great-grandmother are willing to serve as a third-party custodian.[4]

The Court then heard the testimony of Defendant's uncle, Ivan Williams. Mr. Williams stated that on August 18, 2020, Denise Williams told him that Defendant was mistakenly released and had been given a ride from the detention facility by another recently released inmate. Mr. Williams then left to pick up Defendant from the location where he was waiting, called a court officer, and returned to where the United States Marshals were awaiting to transport Defendant.

When addressing the circumstances of Defendant's arrest, Attorney Wolf noted that Magistrate Judge Stafford did not assign great value to any allegations of domestic violence, and Defendant submitted the declaration of Sharica Richardson—Defendant's girlfriend and the female passenger in his vehicle on August 13, 2020. [Doc. 293]. Ms. Richardson's declaration

---

[4] The Court notes that Defendant refers to his biological grandmother as his mother due to the fact that he was legally adopted by his grandmother shortly after his birth.

8

states that she was the passenger in Defendant's vehicle on August 13, 2020, that she and Defendant engaged in a mutual argument, she started hitting and scratching Defendant while he was driving, Defendant pinned her to her seat with his right hand and attempted to get her to calm down, and, due to her anxiety, she jumped from the car while it was moving at around twenty miles per hour. [*Id.*].

Therefore, Defendant claimed that he had overcome the applicable presumption in this case by demonstrating his previous successful period of probation, noted his lack of a significant criminal history, and pointed to his recent employment and strong family support. Additionally, Defendant asserted that there is no proof that he was aware of the warrant for his arrest and claimed that the last allegation of his drug trafficking is approximately two years ago. Attorney Wolf noted that Defendant turned himself in after he was mistakenly released on August 18, 2020.

The Court then heard the testimony of Defendant's grandmother—Denise Williams—the proposed third-party custodian. Ms. Williams testified that she is currently employed by the Third Judicial Circuit Court in Detroit, and works from 7:00 a.m. to 3:30 p.m. However, Ms. Williams stated that Defendant's great-grandmother would be present at the residence during these times, and neither she nor her mother have a criminal history. Ms. Williams testified that she has a valid driver's license and that no one (other than her mother) lives at her residence. Additionally, Ms. Williams stated that although Defendant kept certain items at her house, he was largely living with an ex-girlfriend for the past couple of years.

On cross-examination, Ms. Williams stated that Defendant had moved out of her house approximately three years ago, in 2017, and had only stayed at her residence since then on a limited basis. AUSA Quencer then argued Defendant had lied to the United States Probation Office in the

9

Case 3:19-cr-00057-TAV-DCP Document 304 Filed 09/22/20 Page 9 of 16
PageID #: 1672

Eastern District of Michigan, as the pretrial services report lists 29065 Beechnut Street (Ms. Williams' residence) as his address since August 1, 2015. However, Attorney Wolf claimed that Defendant had provided his mailing address to the United States Probation Office.

Lastly, the Government argued that despite Magistrate Judge Stafford specifically noting during Defendant's detention hearing that he was to be detained until he obtained a GPS tether, Defendant knowingly left the detention facility upon his incorrect release without location monitoring. Additionally, the Government notes that Defendant is alleged to have entered into a drug trafficking conspiracy shortly after finishing his previous period of probation.

### III. STANDARD OF REVIEW

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant, (3) the Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4).

In the instant case, the Government moved for detention, and Magistrate Judge Stafford held a detention hearing, because Defendant is charged with an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more. *See* 18 U.S.C. § 3142(f)(1)(C). Due to the crime charged, a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). In this respect, the Superseding

10

Indictment provides probable cause to believe that Defendant has committed an offense under the Controlled Substances Act for which he faces a maximum sentence of ten years or more. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of production with the Defendant, while the Government retains the burden of persuasion. *Stone*, 608 F.3d at 945. To satisfy his burden of production, the defendant must present at least some evidence that he is not a danger or a flight risk. *Id.* Even when the defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

"If a person is ordered released by a magistrate judge . . ., the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain the defendant *de novo*.[5] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000) (holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that de novo review is appropriate); *see also United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful *de*

---

[5] Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC-REW, 2017 WL 5711438, *2–3 (E.D. Ky Nov. 17, 2017) (Wier, MJ), *report and recommendation adopted by,* 2017 WL 5710443 (E.D. Ky Nov. 27, 2017) (Caldwell, CJ). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all of the evidence offered to that point. *Id.* at *3.

*novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075 at *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order must be "determined promptly." 18 U.S.C. § 3145(a).

**IV. ANALYSIS**

As discussed above, the Court finds that the rebuttable presumption under 18 U.S.C. § 3142(e)(3)(A) that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community" applies in this case, because the Defendant is charged with a violation of the Controlled Substances Act for which the maximum potential penalty is ten years or more. However, the Court also finds that Defendant has rebutted this presumption by providing evidence that he self-reported to the United States Marshal's Service after being mistakenly released from detention, his previous successful period of probation, a proposed third-party custodian, and the condition of home incarceration with location monitoring. However, the Court must still consider the presumption that detention is appropriate, along with the other factors. *See Stone*, 608 F.3d at 945.

First, the Court finds that the nature and circumstances of the offense charged argues in favor of detention. 18 U.S.C. § 3142(g)(1). Again, the Court notes that Defendant is charged in Count One of the Superseding Indictment [Doc. 47] with conspiracy to knowingly and intentionally possess with intent to distribute 100 grams or more of a mixture and substance containing heroin, a Schedule I controlled substance, and 40 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance. In its briefing [Doc. 279], the

12

Government detailed that Defendant was observed on video surveillance distributing 3.41 grams of a heroin/fentanyl mixture in a drug-free school zone on July 19, 2018; 9.43 grams of a heroin/fentanyl mixture on July 26, 2018; 2.18 grams of a heroin/fentanyl mixture on August 21, 2018; 6.73 grams of a heroin/fentanyl mixture in a drug-free school zone on September 28, 2018; 0.40 grams of a heroin/fentanyl mixture in a drug-free school zone on December 13, 2018; 7.01 grams of a heroin/fentanyl mixture in a drug-free school zone on January 3, 2019; 7.187 grams of a heroin/fentanyl mixture in a drug-free school zone on January 15, 2019; and 7.39 grams of a heroin/fentanyl mixture in a drug-free zone on January 24, 2019. [*Id.* at 4].

Second, the weight of the evidence of Defendant's dangerousness argues in favor of detention. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. Here, the Court agrees with Magistrate Judge Stafford's conclusion that conditions may be put in place that would reasonably assure Defendant's appearance at future court proceedings. However, the Court finds that the allegations submitted by the Government support a finding that Defendant poses a significant danger to the community, such that sufficient conditions may not be imposed. The charged offense involves dangerous narcotics, including fentanyl, and the Court notes the documented death of an individual as a result of the alleged drug trafficking operation. Moreover, the record contains additional evidence that the alleged drug trafficking in the instant case was conducted in a particularly dangerous manner, as Defendant is alleged to have distributed heroin and fentanyl on several occasions while in a drug-free school zone. The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even

13

without any indication that the defendant has engaged in violence." *Id.* at 947 n.6 (observing that "drug trafficking is a serious offense that, in itself, poses a danger to the community").

The third factor examines Defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," along with evidence of whether the Defendant was on conditions of release at the time of the current offense. 18 U.S.C. § 3242(g)(3)(A)-(B). First, the Court notes Defendant's lack of a significant criminal history and successful competition of the HYTA probation program for his possession of marijuana charge, but points out that courts have never required a prior criminal record before ordering detention. *See United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991) ("Although a prior record of violence eases the government's burden of showing dangerousness, it is not essential."), *cited with approval in Stone*, 608 F.3d at 950. Moreover, although Defendant's period of supervision under the HYTA was successfully terminated on April 21, 2017, the Superseding Indictment alleges the involvement in a drug conspiracy at least as early as February of 2018.

Additionally, the Court finds significant evidence of the Defendant's strong family ties to Detroit, which support release. Defendant's grandmother, Ms. Denise Williams, testified at September 18, 2020 hearing, and stated that she was willing to serve as a third-party custodian, as well as that either she or her mother—Defendant's great grandmother—would always be present at the residence.

However, the Court notes that while Defendant did self-report to the United States Marshal's Service upon his incorrect release, he also provided an alias and false birth date to law

14

Case 3:19-cr-00057-TAV-DCP Document 304 Filed 09/22/20 Page 14 of 16
PageID #: 1677

enforcement during his arrest on August 13, 2020. Defendant stated to law enforcement that he could not remember his last known address. Before his arrest, Defendant was observed driving erratically and driving down the wrong way on a one-way road, as well as stated that he did not have a valid license on his person. Additionally, the Court finds that Defendant has a sparse employment history, and notes Magistrate Judge Stafford's conclusion that Defendant's employment at Urban City Cowboys making $600 a month was not significant, particularly in light of the potential lack of availability due to the COVID-19 pandemic. Lastly, while the Court acknowledges Defendant's strong family ties to Detroit, he was also alleged to have traveled to the Eastern District of Tennessee on a regular basis in order to engage in drug trafficking.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Due to the overwhelming risk of dangerousness associated with trafficking heroin and fentanyl, combined with Defendant's continued travel from Detroit to the Eastern District of Tennessee, the Court finds that the proposed conditions of home incarceration with location monitoring, as well as Ms. Williams serving as a third-party custodian, are still insufficient to reasonably assure the safety of the community. *See, e.g.*, *United States v. Williams*, No. 3:19-CR-187-TAV, 2020 WL 2529356, at *6 (E.D. Tenn. May 18, 2020) ("While the hand-to-hand sales which defendant is charged with committing may not have involved violence, the absence of violence does not diminish the impact of heroin and fentanyl drug trafficking in terms of contributing to opioid addiction and all its attendant harms.").

Consequently, the Court finds that the evidence and information provided at the hearing established by clear and convincing evidence that: (1) the Defendant poses a serious risk of danger

to the community or another person; and (2) no condition or combination of conditions will reasonably assure the safety of individuals of the community if the Defendant were released on bond.

## V. CONCLUSION

Accordingly, the Court **RECOMMENDS** that the Government's Emergency Motion Under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [Sealed Doc. 272] be **GRANTED**, and that Defendant remain detained pending trial. Due to the need to determine this issue promptly, any objections to this report and recommendation must be served and filed on or before **September 29, 2020**. Any response to objections must be filed on or before **October 2, 2020**.

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge